**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Latisha N Martin Williams, | No. CV-24-01901-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Latisha N Martin Williams' ("Williams") application for disability and disability insurance benefits by the Social Security Administration ("SSA"). Williams filed a complaint with this Court seeking judicial review of that denial. (Doc. 1.) After reviewing the briefs (Docs. 16, 20) and the Administrative Record (Docs. 14, 15), the Court affirms.

## I.    BACKGROUND

Williams filed for Title II disability insurance benefits on September 3, 2020, alleging her disability began on January 23, 2017. (Doc. 16 at 5.) The SSA initially denied her claim on January 30, 2023. (*Id.*) But after the SSA Appeals Council remanded for error, an Administrative Law Judge ("ALJ") reviewed her case again.

In the remanded case, the ALJ determined that Williams had the following severe impairments: hammertoes, pes planus, onychomycosis, tinea pedis, a not otherwise specified anxiety disorder, major depressive disorder, and posttraumatic stress disorder.

(Administrative Record ("AR") at 23-24.)[1] But the ALJ also found that Williams' severe impairments, whether taken alone or combined, did not meet or medically equal the severity of one of the SSA's listed disabilities. (*Id.* at 25.) The ALJ explained that the longitudinal medical evidence shows that Williams' residual functional capacity ("RFC") limits her to simple, repetitive tasks and that she could frequently have contact with coworkers, supervisors, and the general public. (*Id.* at 27.) The ALJ concluded that Williams was not disabled. (*Id.* at 36.)

The Appeals Council denied Williams' request to review the ALJ's decision on June 24, 2024. (*Id.*) Williams then appealed the ALJ's decision to this Court.

## II.    LEGAL STANDARDS

### A.    Scope of Review

This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). When reviewing an ALJ's decision, a district court only reviews the issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). In reviewing those issues, the court "look[s] to *all* pages of [an] ALJ's decision." *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022). An ALJ is the ultimate finder of fact and is responsible for resolving ambiguities, determining credibility, and resolving conflicts in medical testimony. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").

A district court cannot reverse an ALJ's decision unless there was legal error or the decision was unsupported by substantial evidence. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citation omitted). If the substantial evidence "is susceptible to more than one rational interpretation, one of which supports [an] ALJ's decision, [an] ALJ's conclusion must be upheld."

---

[1] The Court references the page numbers of the Administrative Record rather than the ECF page numbers.

1   *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). A district court only reviews the

2   reasons provided by an ALJ in the disability determination and may not "affirm [an] ALJ

3   on a ground upon which [it] did not rely." *Garrison*, 759 F.3d at 1010.

4         **B.    Determining Disability**

5         The SSA follows a five-step process when determining whether a claimant is

6   disabled. 20 C.F.R. § 404.1520(a)(4). At the first step, an ALJ determines whether a

7   claimant is presently engaging in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). At

8   step two, an ALJ determines whether a claimant has a "severe" medically determinable

9   physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). At step three, an ALJ considers

10  whether a claimant's impairment or combination of impairments meet or medically equal

11  an impairment listed in 20 C.F.R. Part 404, Subpart P. *Id.* § 404.1520(a)(4)(iii). If not, an

12  ALJ proceeds to step four, where the ALJ assesses a claimant's RFC to work and

13  determines whether a claimant is still capable of performing past relevant work. *Id.*

14  § 404.1520(a)(4)(iv). If so, a claimant is not disabled, and the inquiry ends. *Id.* If not, an

15  ALJ determines at step five whether a claimant can perform any other work in the national

16  economy based on the claimant's RFC, age, education, and work experience. *Id.*

17  § 404.1520(a)(4)(v).

18        When evaluating the RFC of claimants with severe mental impairments at step four,

19  an ALJ considers the listing of impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1,

20  § 12.00. Depending on the claimed disability, an ALJ evaluates two to three criteria (called

21  the Paragraph A, B, and C criteria) to determine a claimant's limitations. *Id.* § 12.00(A)(2).

22  For most mental impairments, a claimant establishes disability by showing that they satisfy

23  the Paragraph A criteria and either the Paragraph B or C criteria. *Id.* In evaluating all

24  criteria, an ALJ uses longitudinal medical evidence, meaning how medical sources view a

25  claimant's functionality over time. *Id.* § 12.00(C)(5).

26        Paragraph A criteria include the medical evidence that must be present for the

27  claimed disability. *Id.* § 12.00(A)(2)(a). Paragraph B criteria are functional criteria that

28  represent the areas of mental function a person uses in a work setting. *Id.* § 12.00(A)(2)(b).

In determining whether a claimant meets the Paragraph B criteria, an ALJ evaluates a claimant's ability to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *Id.* A claimant must have an "extreme" limitation in one category or two "marked" limitations in two categories to be considered disabled. *Id.* Paragraph C criteria evaluate "serious and persistent mental disorders," requiring a medically documented history of the existence of the disorder over a period of at least two years. *Id.* § 12.00(A)(2)(c). Paragraph C criteria require evidence of both "(1) [ongoing] medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that . . . diminish[] the symptoms and signs of [the] mental disorder; and (2) . . . minimal capacity to adapt to changes in [a claimant's] environment or to demands that are not already part of [their] daily life." *Id.*

## III.    DISCUSSION

The Court has reviewed the record and will discuss the pertinent evidence when addressing the issues raised by Williams. At step three of the disability determination, the ALJ found that Williams' severe physical and mental impairments did not medically equal a disability listed in 20 C.F.R. Part 404, Subpart P. (AR at 25-26.) Then, when considering Williams' mental impairments at step four, the ALJ found that the longitudinal medical evidence shows that Williams' RFC limits her to simple, repetitive tasks and that she could frequently have contact with coworkers, supervisors, and the general public. (*Id.* at 27.) Williams raises two arguments on appeal: in formulating Williams' RFC, (1) the ALJ improperly discounted medical evidence and substituted his own lay opinion, and (2) the ALJ impermissibly rejected Williams' subjective symptom testimony. (Doc. 16 at 11, 18.)

### A.    Medical Evidence

An ALJ must assess all the medical evidence when formulating a claimant's RFC. 20 C.F.R. § 404.1545(a)(1). RFC is an administrative, not medical, finding concerning a claimant's ability to work. *Id.* § 404.1546. In examining medical evidence, an ALJ must articulate how persuasive he or she finds all the medical opinions from each doctor or other source. *Kitchen v. Kijakazi*, 82 F.4th 732, 739 (9th Cir. 2023). Supportability and

- 4 -

1    consistency are the "most important" factors for an ALJ to consider in this analysis. *Woods*
2    *v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(a)).
3    Supportability means the extent to which a medical source supports the medical opinion
4    by explaining the relevant objective medical evidence. 20 C.F.R. § 404.1520c(c)(1).
5    Consistency measures how a medical source compares with others; "[t]he more consistent
6    a medical opinion(s) or prior administrative medical finding(s) is with the evidence from
7    other medical sources and nonmedical sources in the claim, the more persuasive the
8    medical opinion(s) or prior administrative medical finding(s) will be." *Id.*
9    § 404.1520c(c)(2). "[A]n ALJ need only provide 'an explanation supported by substantial
10   evidence,'" not account for every possibility. *See Kitchen*, 82 F.4th at 740 (quoting *Woods*,
11   32 F.4th at 792).

12        It is uncontested that Williams has severe mental impairments.[2] (Doc. 16 at 11; Doc.
13   20 at 2.) The disagreement lies in whether the ALJ properly accounted for all the medical
14   evidence in formulating her RFC. Williams argues that the ALJ improperly discounted nine
15   different medical opinions from eight doctors in assessing her mental RFC. (Doc. 16 at 11,
16   13.) These are the opinions of Dr. Littlefield (one in 2017 and another in 2019), Dr. Downs,
17   Dr. Titus, Dr. Campbell, Dr. Salk, Dr. Rivera, Dr. Van Der Hayden, and Dr.
18   Martin-Concepcion. (*Id.* at 3-5.) Williams further argues that the ALJ, by discounting these
19   medical opinions, did not consider any medical evidence and instead substituted his own
20   reasoning. (*Id.* at 15.) The SSA counters that, in formulating Williams' RFC, the ALJ did
21   not entirely adopt any medical opinion, instead considering all opinions from all doctors in
22   the record. (Doc. 20 at 4.)

23        When evaluating all criteria, an ALJ uses longitudinal medical evidence, meaning
24   how medical sources view a claimant's functionality over time. 20 C.F.R. Pt. 404, Subpt.
25   P, App. 1, § 12.00(C)(5). In formulating the longitudinal evidence of Williams' mental

26
27   [2] Williams does not contest the ALJ's medical findings concerning her physical
     impairments, only focusing on the medical evidence from mental health providers. (*See*
28   Doc. 16 at 3.) Accordingly, the Court only reviews the ALJ's findings regarding Williams'
     mental impairments. *See Lewis*, 236 F.3d at 517 n.13 (finding that the Court only reviews
     the issues raised by the party challenging the decision).

1   impairments, the ALJ relied on medical opinions from Williams' primary care doctors, her
2   licensed clinical social worker ("LCSW"),[3] some specialists (including Dr. Littlefield, Dr.
3   Van Der Heyden, and Dr. Rivera), and Williams' Primary Care-Mental Health Integration
4   specialists at the Veteran's Affairs Hospital. (AR at 25-26.) The ALJ chose these sources
5   because they had the most exposure to Williams over the disability period. The longitudinal
6   medical evidence shows that Williams has severe mental impairments, but her impairments
7   are not severe enough to show disability. Williams' providers consistently and
8   independently made these determinations over the five-year disability period.

9       Williams argues that the ALJ substituted his own reasoning and did not consider
10  any medical evidence at all. But this is clearly not the case. The ALJ properly evaluated
11  the entire record and analyzed the medical opinions of every source when making his
12  determination. *See Kitchen*, 82 F.4th at 739. The ALJ did not supply his own reasoning but
13  chose which medical opinions were supported and consistent with one another for the
14  purpose of formulating Williams' RFC. *See* 20 C.F.R. § 404.1546 (finding that formulating
15  an RFC is an administrative, not medical, finding concerning a claimant's ability to work).
16  This finding by the ALJ is supported by substantial evidence.

17      The ALJ also addressed the persuasiveness of each medical opinion he rejected.
18  *Kitchen*, 82 F.4th at 739. The ALJ first rejected six medical opinions as not persuasive
19  (Drs. Downs, Titus, Campbell, Salk, and Dr. Littlefield's 2017 and 2019 opinions) because
20  these doctors found no mental impairments at all. (AR at 30.) While supported with
21  objective medical evidence, these opinions were not consistent with the longitudinal
22  medical evidence, which found that Williams had some severe mental impairments and
23  increased symptoms at times. (*Id.*) The ALJ then rejected three medical opinions (Drs. Van
24  Der Heyden, Rivera, and Martin-Concepcion) as not persuasive because these doctors
25  found marked or extreme limitations in Williams' RFC. (*Id.* at 32-34.) These three opinions

26  _____
27  [3] While LCSWs can perform medical assessments, Social Security regulations do not
    consider the opinion of an LCSW as an acceptable medical source. *Casner v. Colvin*, 958
    F. Supp. 2d 1087, 1097 (C.D. Cal. 2013). But "an ALJ must consider the opinions of
28  medical providers who are not within the definition of acceptable medical sources" in
    formulating a claimant's RFC. *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017)
    (citation omitted).

1    were not consistent with the medical evidence that Williams only had mild or moderate

2    limitations. (*Id.*) Moreover, Dr. Rivera and Dr. Van Der Heyden did not support their

3    opinions with objective medical evidence, and Dr. Martin-Concepcion's opinion was

4    outside of Williams' disability period. (*Id.*)

5          RFC is an administrative, not medical, finding concerning a claimant's ability to

6    work. 20 C.F.R. § 404.1546. The ALJ reviewed all the medical evidence in the record,

7    pinpointing what medical opinions he found persuasive and unpersuasive. (AR at 30.) The

8    ALJ did not specifically adopt any single medical assessment as his reasoning, instead

9    measuring each medical opinion's support and consistency. (*Id.*) Contrary to Williams'

10    arguments, the ALJ did not adopt his own lay reasoning but considered the medical

11    evidence as a whole to make his determination. Because the ALJ properly followed Social

12    Security regulations by analyzing the supportability and consistency of each medical

13    opinion, the Court finds the ALJ's decision supported by substantial evidence.

14        **B.**     **Williams' Testimony[4]**

15          The ALJ found that the longitudinal medical evidence did not satisfy the Paragraph

16    B criteria. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A)(2)(b). The ALJ found

17    persuasive medical evidence that Williams had a mild limitation in understanding,

18    remembering, or applying information; a mild limitation in managing herself; a moderate

19    limitation in interacting with others; and a moderate limitation in respect to concentrating,

20    persisting, or maintaining pace, including the ability to complete tasks. (AR at 25-26.)

21    Because there were no extreme or marked limitations, the Paragraph B criteria was not

22    satisfied. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A)(2)(b). Further, the ALJ found

23    that the Paragraph C criteria was not satisfied because there was no evidence demonstrating

24    Williams had two years of continuous mental health treatment. (AR at 26.) Williams' RFC

25    limits her to simple, repetitive tasks, and she could frequently have contact with coworkers,

26    supervisors, and the general public. (*Id.* at 27.)

27       

28     

---

[4] Williams broadly argues that the ALJ rejected all subjective symptom testimony, but Williams only presents a summary of her testimony about mental impairments. (Doc. 16 at 10.) The Court therefore only reviews Williams' arguments as they pertain to her mental health history.

The Court will first examine the standards for evaluating subjective symptom testimony. Then it will analyze Williams' attempts to rebut the ALJ's conclusion her subjective symptoms are not as severe as alleged. Williams first argues the ALJ broadly rejected her symptom testimony without connecting it to the record. (Doc. 16 at 14-20.) Williams then argues the ALJ improperly contrasted her symptom testimony with her daily activities when considering whether she had the RFC for substantial gainful work activity.[5] (*Id.* at 20-24.)

### 1.    Standards for Evaluating Subjective Symptom Testimony

While an ALJ considers a claimant's subjective symptom testimony as a part of the disability evaluation, a claimant's testimony alone cannot establish a disability. 20 C.F.R. § 404.1529(a). An ALJ "must consider whether [a claimant's] statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record." Social Security Ruling 16-3p, 2017 WL 5180304 (Oct. 25, 2017).[6] An ALJ, however, cannot reject a claimant's testimony purely based on inconsistencies with medical evidence. *Id.* Further, general findings are insufficient; an ALJ must identify what testimony is not credible and what evidence undermines the claimant's subjective testimony. *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (citation omitted).

In evaluating subjective testimony about symptoms, an ALJ considers statements about the intensity, persistence, and limiting effects of symptoms, evaluating statements in relation to the objective medical evidence and other evidence. 20 C.F.R. § 404.1259(c)(4). An ALJ considers whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between statements and the rest of the evidence, including history, signs and laboratory findings, and statements by medical sources or other persons

---

[5] Williams also argues that the ALJ improperly rejected her testimony because she did not seek out mental health treatment. (Doc. 16 at 24.) But the ALJ did not reject this testimony. Instead, the ALJ reviewed Williams' history of mental health treatment when considering the Paragraph C criteria (AR at 26) and used this testimony to formulate Williams' RFC (*id.* at 29).

[6] Social Security Rulings "do not carry the force of law, but they are binding on [an] ALJ[] nonetheless." *Molina v. Astrue*, 674 F.3d 1104, 1113 n.5 (9th Cir. 2012) (citation omitted).

about how symptoms affect the claimant. *Id.* Subjective symptoms will be determined to diminish capacity for basic work activities to the extent that alleged functional limitations and restrictions can reasonably be accepted as consistent with the objective medical evidence and other evidence. *Id.* But an ALJ cannot reject a claimant's subjective testimony purely because medical evidence fails to corroborate the alleged severity of the claimant's symptoms. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005); *see Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) ("*Burch* requires [] that an ALJ cannot insist on clear medical evidence to support each part of a claimant's subjective pain testimony when there is no objective testimony evincing otherwise.").

If an ALJ finds that a claimant "presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged," and there is "no evidence of malingering," an ALJ may "reject the claimant's testimony about the severity of [his or] her symptoms only by offering specific, clear and convincing reasons for doing so." *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017) (citation omitted). The clear and convincing standard "is the most demanding required in Social Security cases." *Id.* Although an ALJ is not required to believe every subjective disability claim, "the clear and convincing standard requires an ALJ to show [their] work." *Smartt*, 53 F.4th at 499 (citations omitted). "If [an] ALJ fails to provide specific, clear, and convincing reasons for discounting the claimant's subjective symptom testimony, then the ALJ's determination is not supported by substantial evidence." *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024) (citation omitted).

### 2.    Williams' Subjective Testimony

The ALJ found that Williams presented objective medical evidence that she suffered from severe mental impairments, meeting the Paragraph A criteria. (AR at 28.) But the ALJ also found Williams' "statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record."[7] (*Id.*) The ALJ finally found that Williams did not meet the

---

[7] Williams challenges the use of this language as "deficient," as it is used in many disability determination cases. (Doc. 16 at 17); *e.g.*, *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir.

1    Paragraph C criteria because the record did not demonstrate two years of mental health

2    therapy or other medical treatment. (*Id.* at 26.)

3         In 2020, Williams completed a function report where she indicated her subjective

4    symptoms. (*Id.* at 450.) Williams reported that she cannot be around coworkers or work

5    with people (*id.* at 450, 455), cannot complete tasks on time or stay focused (*id.* at 450),

6    needs special reminders to take care of personal needs and grooming (*id.* at 454), feels like

7    everyone is out to get her (*id.* at 455), has trouble following instructions (*id.* at 458), has

8    trouble remembering events she has experienced (*id.* at 459), and forgets things to the point

9    of getting lost (*id.* at 455). Williams testified about her symptoms at two different hearings.

10   Throughout both, Williams consistently testified that she wanted to work, but her mental

11   health problems prevented her from doing so. (*Id.* at 49, 80, 90, 98-99.) Williams also

12   testified that she cannot concentrate (*id.* at 52, 54, 59, 96), feels too overwhelmed to work

13   (*id.* at 98), is unable to talk to or be around people and coworkers (*id.* at 59-60, 84, 86-87),

14   feels worthless (*id.* at 52), has issues with problem solving (*id.* at 55), and has problems

15   keeping appointments (*id.* at 56).

16        Williams argues that the ALJ did not offer a "legally sufficient rationale" to reject

17   this testimony. (Doc. 16 at 21-22.) Williams further argues that the ALJ did not connect

18   any of her testimony to his analysis, and "[a]t no point did the ALJ 'identify the specific

19   testimony' that is undermined by [her] treatment history." (*Id.* at 22 (citing *Lambert v. Saul*,

20   980 F.3d 1266, 1268 (9th Cir. 2020).) Williams also argues that the ALJ merely discussed

21   the relevant medical evidence to discount her subjective symptom testimony contrary to

22   *Burch*, 400 F.3d at 680. (*Id.*) The SSA counters that the ALJ showed his work and

23   examined the medical evidence when finding Williams' testimony "less than persuasive."

24   (Doc. 20 at 12.) Because Williams does not meet the Paragraph C criteria, the Court

25   considers the Paragraph B criteria to determine whether the ALJ showed his work. *Smartt*,

26   ───────────────
     2020). The use of this boilerplate language is not itself reversible error, but an ALJ must
27   "identify the testimony that was not credible and specify what evidence undermines the
     claimant's complaints." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th
28   Cir. 2014) (citation omitted); *see also Lambert*, 980 F.3d at 1277 (requiring an ALJ to
     articulate specific, clear, and convincing reasons for rejecting subjective symptom
     testimony).

1    53 F.4th at 499.

2        While not specifically cited, the ALJ discussed Williams' subjective testimony for

3    understanding, remembering, or applying information, interacting with others, adapting or

4    managing oneself, and concentrating, persisting, or maintaining pace.

5        For the applying information criterion, the ALJ considered Williams' testimony that

6    she requires special reminders to take care of personal needs and that she has trouble

7    remembering details of events. (AR at 25.) The ALJ contrasted this testimony with

8    objective evidence showing Williams had normal scores on the Mini Mental Status

9    Examination in 2017 and 2019, her providing doctors noted she had good memory and

10   recall, and she attended school for a point during the disability period without difficulty.

11   (*Id.*) The ALJ found a mild limitation in this criterion.

12       For the interacting with others criterion, the ALJ discussed Williams' testimony that

13   "she is not able to relate to people and feels like everyone is out to get her." (*Id.*) The ALJ

14   further discussed Williams' testimony that "she is antisocial and has no interest in speaking

15   or getting to know anyone due to serious trust issues." (*Id.*) The ALJ contrasted this

16   testimony with evidence that providers found Williams friendly and cooperative, had a

17   euthymic and calm mood, and had good eye contact, normal speech, and appropriate social

18   skills. (*Id.* at 26.) Other evidence further indicated that Williams had a boyfriend in 2021,

19   indicating that her supposed inability to interact and relate with people was not as severe

20   as alleged. (*Id.*) The ALJ found a moderate limitation in this criterion.

21       For the adapting and managing oneself criterion, the ALJ considered Williams'

22   testimony that she has difficulty handling stress and changes in her routine. (*Id.*) But the

23   ALJ found that Williams was able to care for herself, her home, her minor daughter, and

24   offered to be a caregiver for a friend.[8] (*Id.*) Her medical providers noted good insight,

25   judgment and grooming, along with clear, organized, and relevant thought content. (*Id.*)

26   Other evidence showed that Williams frequently arrived early for her medical

27   appointments, further supporting a mild limitation in this criterion. (*Id.*)

28
_____
[8] Williams was not actually a caregiver for her friend. She merely applied to be a caregiver but ultimately did not do so. (AR at 64-65.)

For the concentrating, persisting, or maintaining pace criterion, the ALJ considered Williams' testimony that her depression affected her concentration and ability to complete tasks. (*Id.*) The ALJ further considered Wiliams' testimony that she had difficulty following written and spoken instructions. (*Id.*) The ALJ contrasted this testimony with Williams' medical providers noting she had good concentration during medical appointments. (*Id.*) The ALJ found a moderate limitation in this criterion. (*Id.*)

While Williams' testimony supports a marked or extreme limitation, the substantial evidence in the record only supports classifying these criteria as mild to moderate. The ALJ did not just discuss the relevant medical evidence when making his conclusions, as Williams argues. He instead compared Williams' testimony to medical and other evidence while evaluating the Paragraph B criteria. Although Williams' subjective testimony regarding her abilities goes beyond the ALJ's findings, the ALJ properly contrasted Williams' statements with the medical and other evidence. 20 C.F.R. § 404.1259(c)(4). The ALJ offered clear, convincing, and specific reasons for finding that Williams' symptoms were not as severe as alleged. Further, if the substantial evidence "is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954. The Court finds that the ALJ gave specific, clear, and convincing reasons for his rational interpretation. The ALJ's decision pertaining to Williams' subjective testimony must be upheld.

### 3.    Daily Activities

Williams argues that the ALJ discounted her daily activities to "suggest that Williams is not as limited as she describes." (Doc. 16 at 25.) "It is not the court's role to second-guess an ALJ's reasonable interpretation of a claimant's testimony." *Smartt*, 53 F.4th at 500 (citation modified). The standard for discounting daily activity testimony is the same as other testimony: an ALJ may "reject the claimant's testimony about the severity of [his or] her symptoms only by offering specific, clear and convincing reasons for doing so." *Revels*, 874 F.3d at 655. In making a credibility determination, an ALJ can use a claimant's daily activities to contradict the claimant's testimony or to "meet the

threshold for transferable work skills." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (citation omitted). But the Ninth Circuit Court of Appeals has "repeatedly warned that [an] ALJ[] must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Ferguson*, 95 F.4th at 1203 (citation omitted).

Williams' opening brief does not explicitly say what daily activities the ALJ discounted, instead making broad sweeps about her ability. (Doc. 16 at 26.) According to Williams, the ALJ suggested her activities indicate she is not as limited as described in her testimony, but "nothing in Williams' descriptions of her limitations or as described by the ALJ or anywhere else in the record or in the decision indicates that she is capable of maintaining substantial gainful work activity." (*Id.* at 25.) The Court "look[s] to all pages of [an] ALJ's decision" in determining whether substantial evidence supports the ALJ's conclusions, so the Court reviews all the ALJ's findings regarding Williams' daily activities. *Kaufmann*, 32 F.4th at 851.

Williams testified that she needs help bathing and showering (AR at 452), is unable to clean her dishes (*id.*), cannot get the mail (*id.* at 453), will occasionally get the mail (*id.* at 452), can do her laundry (*id.* at 453), drives to pick up groceries/drop her kids off at school (*id.* at 60, 66, 84), dirties her house just to clean it (*see id.* at 85-86), cannot climb up and down stairs (*id.*), cannot concentrate (*id.* at 54), and cannot go outside (*id.* at 54, 60).[9] As discussed above, some of this testimony conflicts with the medical evidence in the record. (*Id.* at 25-26.) The ALJ found that the relevant testimony conflicted with other evidence in the record, namely that Williams, without difficulty, cares for her minor child and attended school. (*Id.*) The ALJ also found that because she had a boyfriend in 2021,

---

[9] Some of these daily activities concern Williams' physical disabilities, which are not at issue here.

1    Williams' supposed inability to interact and relate with people was not as severe as alleged.

2    (*Id.* at 26.)

3        The ALJ is the ultimate finder of fact, responsible for resolving ambiguities,

4    determining credibility, and resolving conflicts in medical testimony. *Andrews*, 53 F.3d at

5    1039. Overall, the ALJ found that Williams' reported daily activities were not consistent

6    with the evidence in the record. It is not the Court's role to second-guess the ALJ's

7    reasonable interpretation of Williams' testimony. *Smartt*, 53 F.4th at 500. The ALJ is

8    affirmed on this ground.

9                    **4.    Summary of Williams' Testimony**

10       An ALJ "must consider whether an individual's statements about the intensity,

11   persistence, and limiting effects of his or her symptoms are consistent with the medical

12   signs and laboratory findings of record." Social Security Ruling 16-3p, 2017 WL 5180304

13   (Oct. 25, 2017). The ALJ explained his findings by contrasting Williams' testimony with

14   the objective medical evidence and other evidence, finding that Williams has the RFC to

15   engage in substantial work activity. The ALJ provided specific, clear, and convincing

16   reasons for rejecting or incorporating Williams' testimony into his reasoning. The Court

17   affirms the ALJ's determination that Williams is not disabled.

18   **IV.    CONCLUSION**

19       Accordingly,

20       **IT IS ORDERED** affirming the ALJ's April 29, 2024, decision denying Plaintiff's

21   claim for disability benefits (Doc. 14-3 at 22-37).

22       **IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment

23   in favor of Defendant and close this case.

24       Dated this 18th day of August, 2025.

25

26

27                    Michael T. Liburdi
                      United States District Judge

28